IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | |
| v. | ) | No. 05-10212-01-MLB |
| | ) | |
| MICHAEL O. GORDON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion to suppress evidence seized in a traffic stop. (Doc. 21.) The motion has been fully briefed, and the court conducted an evidentiary hearing on January 17, 2006. (Docs. 22, 23.) Defendant's motion is GRANTED for reasons set forth herein.

**I.  FACTS**

This case arose from a traffic stop that occurred during the late evening hours of September 18, 2005. Wichita police officers Drew Seiler and Jesse Cornwell were patrolling together in a marked police car on the evening in question. Both officers were part of the Wichita Police Department's Special Community Action Team (SCAT), which focuses on offenses related to narcotics, firearms, and gang-related activity.

On the evening in question, the officers were driving by known drug houses to look for signs of suspicious activity. They proceeded toward 1252 W. Rita, a house occupied by Kevin Henning. Both officers testified that they had made numerous arrests of

individuals inside and in the vicinity of 1252 W. Rita.  These arrests involved narcotics offenses, as well as arrests for identify theft, larceny, and credit card fraud, among other crimes.

Rita and the surrounding streets are depicted in an aerial photograph admitted as defendant's exhibit A.  Beginning at its southernmost point, as shown in exhibit A, Rita proceeds northward from Lydia Street approximately three houses, and then curves to the west, stretching for another fifteen or so houses before terminating into another north-south street.  1252 Rita is the fourth house north of Lydia on the east side of Rita, and is marked by a red dot in defendant's exhibit A.  It lies in the curved portion of Rita where the street transitions from a north-south to an east-west direction.   Sometime around 11:00 P.M. on the evening of September 18, 2005, the officers proceeded north on Rita from Lydia.  As they approached 1252 Rita, they noticed a maroon 1994 Plymouth Voyager minivan bearing Colorado tags parked in front of the residence.  The vehicle was parked on the northeast side of Rita where the street turns to the west.  The officers were northbound on Rita such that they approached the van from the rear, with the suspect vehicle coming along the passenger's side of the patrol car.

The lighting conditions at the time of this first contact with the van are important because of what the officers claim they saw as they drove past the van.  The evidence regarding the light in the area was hotly contested at the hearing.  The officers testified that there was a security floodlight mounted on the front

-2-

of the residence at 1252 Rita, which illuminated the home's driveway and a portion of the front yard. The officers testified that the front porch light was on, and that a street light located approximately 100 feet away was also illuminating the area.

Both officers testified that Officer Seiler, who was in the front passenger seat of the patrol car, illuminated the van with a handheld flashlight as Officer Cornwell drove past the vehicle. Both officers testified that they saw defendant sitting in the driver's seat. Then, as the flashlight illuminated the van's windshield, Officer Seiler observed a crack extending across much of the lower portion of the glass.

Officer Seiler testified that based on his training and experience as a SCAT officer, along with his specific experience with the residence at 1252 W. Rita, he suspected that the van might be involved in some sort of criminal activity. Therefore, he was looking for some reason to initiate a traffic stop. Since the vehicle was parked and not running at that time, he was mostly looking for equipment defects that would justify the stop. He was aware that under certain conditions, a cracked windshield would constitute a violation of a Wichita city ordinance.[1]

Nevertheless, having found a defect, the officers delayed in making contact with the vehicle while they tried to obtain vehicle registration information via the patrol car's onboard computer. Both officers testified that this was often a slow process, and

---

[1] A copy of the relevant local ordinance was admitted as defendant's exhibit 2. Defendant also provided a copy of a similar state statute. Def's exh. 1.

-3-

that it was particularly slow at the time they ran the van's license plate number. Accordingly, the officers continued west on Rita, turned left at the next intersection, then looped around the block to make another pass by the van. By the time they returned to 1252 Rita, the van was gone; however, after rounding the curve to the east-west segment of Rita, they identified the van proceeding westbound ahead of them.

After a short pursuit, the officers initiated a traffic stop, the details of which are not relevant here. After finding drug residue in the vehicle, the officers arrested defendant. During the subsequent search of his van, the police recovered at least one handgun, as well as some methamphetamine and marijuana.

Defendant was indicted for possessing a handgun in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c), for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), as well as for possessing marijuana and methamphetamine. (Doc. 10.) Defendant asks that all evidence seized in the search of his van, and all statements that he made after his arrest, be suppressed. He claims that, with the lighting conditions as they were at the time the officers drove past his van at 1252 W. Rita, it was impossible for them to have seen the crack in his windshield. Therefore, defendant contends, it was illegal for the officers to stop his vehicle and the evidence resulting from that unlawful stop should be suppressed. (Doc. 22 at 5.)

**II.  ANALYSIS**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against

-4-

unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has liberally interpreted "seizures" to encompass routine traffic stops. See Delaware v. Prouse, 440 U.S. 648, 653 (1979). The two-pronged standard espoused in Terry v. Ohio, 392 U.S. 1 (1968), thus applies, see United States v. Caro, 248 F.3d 1240, 1244 (10th Cir. 2001), and renders the search reasonable if "the officer's action was justified at its inception, and [if] it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20.

An initial traffic stop does not offend Fourth Amendment protections if it was "based on an observed traffic violation," or if "the officer has a reasonable articulable suspicion that a traffic . . . violation has occurred." United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998). Decision of this motion turns on whether or not the officers saw the crack before they stopped defendant's vehicle. Since this was a warrantless search, the government bears the burden of proving by a preponderance of the evidence that the search was justified. United States v. Zubia-Melendez, 263 F.3d 1155, 1160 (10th Cir. 2001).

Defendant hired a private investigator to look into the lighting situation at 1252 W. Rita at the time of the stop. The investigator simulated the lighting conditions by parking defendant's van in approximately the same location as it was on the

night of September 18, 2005.[2]  He took video and still photographs using flash photography from various locations approximating the positions and angles from which the officers would have viewed defendant's windshield.  The photos and the video were admitted into evidence.  (Def's exhs. B-H.)  They all showed that it was virtually impossible to see the crack in the windshield from the officer's vantage point.

The government contends that in addition to ambient lighting, Officer Seiler illuminated the van with a powerful flashlight, which made the crack visible to both officers.  Although the officers' reports of the incident were not offered by either party, Officer Seiler conceded that there was no mention of the use of a flashlight in either report.  This fact was confirmed by defendant's investigator, who testified that although he reviewed the officers' reports and interviewed defendant in an effort to re-create the scene as best he could, the first time he heard anyone say that the officers employed a flashlight was when they testified at the hearing.

Surely the officers knew that the validity of their initial stop was critical to the admissibility of any contraband recovered from the ensuing search.  Therefore they must have been aware of the importance of documenting just how it was that they were able

---

[2] The re-enactment was performed on December 28, 2005.  The parties debated whether the van was in precisely the same location as on the night of the arrest.  Additionally, the government suggested that differences in the moonlight between the two nights may have invalidated the comparison.  However, there was no evidence regarding moon conditions.  Thus, the court rejects this argument.

-6-

to see this crack through the darkness.³ Both officers testified that the flashlight was the sole tool that enabled them to identify this defect, yet it was not mentioned in either report. Under these circumstances, the court finds that the government has failed to meet its burden to prove that this traffic stop was justified from its inception.⁴ The government makes no further argument that the search and seizure was justified under some other theory. Defendant's motion to suppress the evidence seized in that stop and the statements that he made subsequent thereto is accordingly GRANTED.

    IT IS SO ORDERED.

    Dated this __18th__ day of January 2006, at Wichita, Kansas.

                                 s/ Monti Belot
                                 Monti L. Belot
                                 UNITED STATES DISTRICT JUDGE

---

[3] Photographs of the windshield show that the crack in question was a single, long fissure across the lower part of the glass. Its presence was not highlighted by myriad cracks radiating away from the main fracture, as you might see when a large rock or bullet strikes a windshield. No one can seriously contest the fact that the crack, although long, was fairly subtle. (Def's exhs. B-E.)

[4] This decision does not rest on the distinction between the officers' subjective intent and any objective basis for the stop. See Devenpeck v. Alford, 543 U.S. 146, 125 S.Ct. 588, 593-94, 160 L. Ed. 2d 537 (2004); United States v. Greenspan, 26 F.3d 1001, 1004-05 (10th Cir. 1994). Rather, this decision is based solely on the fact that the government has failed to meet its burden to prove that the officers had an objective basis for the traffic stop before it was initiated.